UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| WARSAW ORTHOPEDIC, INC., *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CAUSE NO:  3:12-cv-438-JD-CAN |
| | ) | |
| NUVASIVE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**OPINION AND ORDER**

On September 4, 2012, Defendant, NuVasive, Inc., filed a motion seeking transfer of this case to the Southern District of California pursuant to 28 U.S.C. § 1404(a).  On September 21, 2012, Plaintiffs, Warsaw Orthopedic, Inc. ("Warsaw"), Medtronic Sofamor Danek U.S.A., Inc. ("Medtronic U.S.A."), Medtronic Puerto Rico Operations Co. ("Medtronic Puerto Rico"), and Osteotech, Inc. ("Osteotech"), filed a response.  On October 1, 2012, Defendant filed a reply. For the following reasons, the Court **GRANTS** Defendant's motion to transfer.

**I.    RELEVANT BACKGROUND**

On August 17, 2012, Plaintiffs, Warsaw,[1] Medtronic U.S.A.,[2] Medtronic Puerto Rico,[3] and Osteotech,[4] brought this suit in the Northern District of Indiana against Defendant, NuVasive, Inc., alleging infringement of three patents in the manufacture and sale of medical devices and procedures used in spinal surgery.  Warsaw is also the sole remaining plaintiff in an

---

[1] Warsaw is an Indiana corporation with its principal place of business in Warsaw, Indiana.

[2] Medtronic U.S.A. is a Tennessee corporation with its principal place of business in Memphis, Tennessee.

[3] Medtronic Puerto Rico is a Cayman Islands corporation with its principal place of business in Humacao, Puerto Rico.

[4] Osteotech is a Delaware corporation with its principal place of business in Eatontown, New Jersey.

ongoing patent infringement action against NuVasive in the Southern District of California.[5] Case No. 3:08-CV-1512-CAB-MDD.  The California case involves thirteen patents also related to medical devices and procedures used in spinal surgery.  Because of the complexity of the California case, it is being litigated in three phases.

Phase I concluded with a jury verdict on September 20, 2011.  In March, 2012, the parties filed cross appeals in the Federal Circuit following the California court's order granting final judgment as to the Phase I claims pursuant to Federal Rule of Civil Procedure 54(b).  On August 2, 2012, the Federal Circuit dismissed the appeals because the question of royalties had not been sufficiently resolved to justify a final judgment order.  On August 17, 2012, the Indiana Plaintiffs filed their complaint with this Court.  Defendants filed the instant motion for transfer on September 4, 2012.  As of a status conference with the California court on September 5, 2012, discovery as to Phase II of the California case was ongoing while the court was completing its consideration of royalties in Phase I as directed by the Federal Circuit.

Warsaw currently owns all three patents at issue in the Indiana case.[6]  Warsaw has various licensing arrangements with Medtronic U.S.A. or Medtronic Puerto Rico to use, make, have made, import, offer for sale, or sell products under the designated patents.  Osteotech owned one of the patents until April 15, 2011, which gives it rights to that patent through that date.  None of the three Indiana patents are at issue in the California case.  However, both cases allege infringement involving NuVasive's CoRoent XL line of implants, MaXcess line of

---

[5]Indiana plaintiffs Medtronic U.S.A. and Medtronic Puerto Rico were voluntarily dismissed from the California case on August 16, 2010, along with Medtronic Sofamor Danek Deggendorf GmbH. [Doc. No. 24-1].

[6]The Court will refer to the three patents at issue in the Indiana case as "the Indiana patents," and the thirteen patents at issue in the California case as "the California patents."

retractors, and its XLIF surgical procedure. NuVasive's Osteocel Plus bone graft product is implicated in the Indiana case, but not the California case.[7]

In its motion, NuVasive argues that transfer to the Southern District of California would be in the interest of justice and more convenient for the parties and witnesses largely because of the similar patent infringement case pending in the California court. This Court agrees.

## II. ANALYSIS

Pursuant to 28 U.S.C. § 1404(a), a federal district court may transfer any civil action to any other district for the convenience of the parties and witnesses and in the name of justice if venue is proper in both courts. Therefore, transfer analysis involves separate inquiries into (1) proper venue in both the transferor and transferee courts; (2) the convenience of parties and witnesses; and (3) the interest of justice. *Research Automation Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010). The burden is on the movant to show that transfer is warranted. *Coffee v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). However, the statute allows for a "flexible and individualized" analysis of the unique issues raised in a particular civil action, which therefore places considerable discretion in the transferor court when deciding whether transfer is appropriate. *Research Automation*, 626 F.3d at 977–78 (citing *Stewart Org., Inc. v. Ricoh Corp., et al.*, 487 U.S. 22, 29 (1988)).

    **A.    Venue is proper in the Northern District of Indiana and the Southern District of California.**

28 U.S.C. § 1391(b)(1) provides that venue is proper in a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located. For

---

[7] On June 25, 2010, the California court denied as untimely Warsaw's attempt to accuse the Osteocel Plus product of infringing one of the patents litigated in Phase I of the California case. [Doc. No. 24-2].

3

venue purposes, a defendant is deemed to reside in the judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question. *Id.* § 1391(c)(2). In addition, patent infringement actions may be brought in the district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." *Id.* § 1400(b).

NuVasive is a Delaware corporation with its principal place of business in San Diego, California. In their complaint, Plaintiffs allege that NuVasive has regular and systematic contacts with the State of Indiana based on their business activities in the State. Because NuVasive does not challenge Plaintiffs' assertion, the Court assumes that NuVasive has the requisite minimum contacts with the State and is subject to personal jurisdiction in the Northern District of Indiana. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 787 (7th Cir. 2003). Therefore, venue is proper in the Northern District of Indiana. Venue is also proper in the Southern District of California because NuVasive's business is established there. Having determined that venue is proper in both districts, the Court will now analyze the interest of justice and convenience factors and explain why transfer in this case is appropriate.

### B.  Interest of Justice

An assessment of the interest of justice focuses on the efficient administration of the court. *Research Automation Inc.,* 626 F.3d at 978. Factors that are relevant to this analysis include: (1) the speediness of trial in either jurisdiction; (2) each court's familiarity with the relevant law; and (3) each location's relationship to the controversy. *Id.*

#### 1.  Speediness of trial

Plaintiffs argue that transfer will unduly delay the litigation of the Indiana patents. The

average time to trial is 3.5 months shorter in the Northern District of Indiana than in the Southern District of California. [Doc. No. 30-16]. Therefore, the difference between the average times to trial weighs in favor of venue in the Indiana court, if only slightly.

However, Plaintiffs also accuse NuVasive of intentional delay in the Indiana case. Both parties report an e-mail exchange they shared in September 2012, in which NuVasive refused to incorporate the litigation of the Indiana patents into Phase II of the California case in exchange for Plaintiffs' consent to transfer. [Doc. Nos. 30-3, 31-9]. In that exchange, NuVasive informed Plaintiffs that it would be more efficient to litigate the Indiana patents, regardless of the forum, after the Phase I appeal is resolved. Therefore, it is likely that NuVasive will seek to ensure that the Phase I appeal is completed before the Indiana patents are litigated. Any resulting delay would be the same in either forum, which favors neither forum. Overall, the speediness factor favors neither forum significantly and consequently weighs against transfer.

### 2. Court's familiarity with applicable law

Because of the overlapping accused products and procedures involved in litigating both the California patents and the Indiana patents, the issues that will be raised in this case are similar to those already before the California court. Plaintiffs argue, however, that the Indiana patents and claims are completely different from those raised in the California case diminishing the value of that court's familiarity with the California case. The Court disagrees. Patent litigation is very complex. Even though the California court has not considered the Indiana patents, its investment in learning about the overlapping products and procedures and the relationships among the parties is significant. The Indiana court would need to invest similar time, energy, and resources into developing background knowledge on the products and parties

in order to adjudicate the Indiana claims properly. This duplicative effort would hinder judicial efficiency.

The same concern for judicial economy counters Plaintiffs' argument that the current presiding judge in the California case is not significantly more familiar with issues relevant to the Indiana patents than the Indiana court. The Honorable Cathy Ann Bencivengo was assigned to the California case on March 2, 2012, after the conclusion of the Phase I trial . [Doc. No. 30-10]. Six months later on September 5, 2012, she presided over a hearing in which she indicated that she was preparing an order to resolve the royalties issue raised by the Federal Circuit regarding Phase I while simultaneously managing the litigation of Phase II. [Doc. Nos. 30-2, 31-3]. Judge Bencivengo's investment of judicial resources in preparing the royalties order alone makes her familiar with pertinent facts and law related to the Indiana case. Therefore, the California court's familiarity with relevant products and parties promotes judicial economy and efficiency, which in turn, favors transfer.

### 3. Relationship to controversy

Indiana has a strong state interest in affording the protections of justice to its citizens, including its corporations like Warsaw. Warsaw owns the patents at issue in the Indiana case and manufactures products for use in spinal surgery at its Indiana facility. However, Warsaw does not manufacture any of the products that practice the Indiana patents in Indiana. Moreover, neither NuVasive nor any of the other Plaintiffs have any substantial direct connection to Indiana.

Yet the parties' dispute is directly related to California. First, Warsaw and two of the Indiana Plaintiffs initiated related litigation that continues to this date in the California court.

Second, the controversy in this Court stems from NuVasive's alleged infringement of the Indiana patents.  In patent infringement cases, "the location of the infringer's principal place of business is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff." *Oplus Techs., Ltd. v. Sears Holding Corp.*, No. 11-cv-9029, 2012 WL 2400478, at *4 (N.D. Ill. June 21, 2012) (quoting *Cooper Bauck Corp. v. Dolby Labs., Inc.,* No. 05 C 7063, 2006 WL 1735282, at * 5 (N.D. Ill. June 19, 2006)).  NuVasive's principal place of business is in San Diego, California.  Therefore, the controversy is predominantly focused on activities in California where NuVasive is located.  California's stronger relationship to the controversy favors transfer.

   **B.**  **Analysis of the convenience of the parties and witnesses favors transfer.**

  In evaluating the convenience element, courts generally consider:  (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof; (4) the convenience of witnesses; and (5) the convenience of the parties.  *Schumacher v. Principle Life Ins. Co.*, 665 F. Supp. 2d 970, 977 (N.D. Ind. 2009).

    **1.**  **Plaintiff's choice of forum**

  When considering the convenience factor, a plaintiff's choice of forum is entitled to substantial deference, especially when the chosen forum is the plaintiff's home forum.  *Am. Commercial Lines, LLC v. Ne. Maritime Inst., Inc*., 588 F. Supp. 2d 935, 945 (S.D. Ind. 2008).  Yet, the plaintiff's choice of forum is not always the controlling factor for the court when the totality of the factors suggests a stronger nexus between the transferee court and relevant events.  *Research Automation*, 626 F.3d at 979.

The Indiana court's nexus to this case emanates from Warsaw's status as an Indiana corporation with its principal place of business in this district, its ownership of the patents at issue, and its conduct of manufacturing, sales, and other business functions in this district. In addition, Plaintiffs may have chosen the Indiana court to avoid delay in resolving the disputes related to the Indiana patents, as is their prerogative. NuVasive argues, however, that Plaintiffs engaged in blatant forum shopping by filing their complaint in the Indiana court. NuVasive's argument carries some weight in light of Plaintiffs' statement to both NuVasive and the California court that they were willing to consent to transfer in exchange for NuVasive's incorporation of the Indiana patents into Phase II. Moreover, Warsaw does not manufacture products practicing the Indiana patents in Indiana and two of the Indiana patents were developed in California by the same sole inventor. Furthermore, the alleged infringement occurred predominantly in California at NuVasive's principal place of business. Therefore, California has a stronger nexus to the alleged infringement of the Indiana patents, which warrant less deference to Plaintiff's choice of forum.

### 2. Situs of material events

"The material events of a patent infringement case do not revolve around a particular situs." *Holley Performance Prods., Inc. v. Barry Grant, Inc.*, No. 04 C 5758, 2004 WL 3119017 (N.D. Ill. Dec. 20, 2004) (quoting *Sitrick v. FreeHand Sys., Inc.,* No. 02 C 1568, 2003 WL 1581741 at *3 (N.D. Ill. Mar. 27, 2003)). But as already discussed the location of the alleged infringer's principal place of business in patent infringement cases is often the critical and controlling consideration. In this case, any infringing conduct by NuVasive occurred in California where it manufactured the accused products and employed surgeons to test, train, and

evaluate its products.  Moreover, two of the Indiana patents were invented in California while none were invented in Indiana.  Warsaw did suffer its damages in Indiana, but none of the other Plaintiffs did.  While some material events occurred in Indiana, material events of greater significance occurred in California making it the primary situs of material events.  Therefore, this factor tilts in favor of transfer.

### 3. Relative ease of access to sources of proof

"In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009) (quoting *Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F. Supp. 2d 325, 330 (E.D.N.Y. 2006) (quotation marks omitted)).  In this case, the bulk of relevant documents are located in California where the alleged infringement occurred.  Yet much of the necessary documentation was exchanged electronically in the California case leading to the reasonable inference that documentation required in the Indiana case will be similarly easy to access from the same distance.  Therefore, the ease of access factor does not clearly favor venue in either district.

### 4. Convenience of the parties

This factor involves the consideration of the parties' respective residences and their abilities to bear the expense of trial in a particular forum.  *Coll. Craft Cos., Ltd. v. Perry*, 889 F. Supp. 1052, 1056 (N.D. Ill. 1995).  Courts should avoid transfer when it merely shifts inconvenience from one party to another without sufficient cause. *Research Automation*, 626 F.3d at 979.  Plaintiffs, Warsaw, Medtronic U.S.A., and Medtronic Puerto Rico, and NuVasive have already demonstrated their ability to engage effectively in patent infringement litigation in

Southern California and other locations across the nation, which weighs against transfer. Although of little consequence in the convenience analysis, Plaintiffs are all located closer to Indiana than California. Arguably, however, this convenience is at least partially offset by the lack of local counsel for any party in Indiana. Any inconvenience to the parties is nominal and thus favors neither venue, which weighs against transfer.

### 5. Convenience of the witnesses

The convenience of witnesses is often considered the most important factor in the convenience analysis, and courts consider everything from the number of witnesses to their willingness to appear. *Omnisource Corp. v. Sims Bros., Inc.*, No. 1:08-CV-89, 2008 WL 2756345, at *6 (N.D. Ind. July 14, 2008). Yet "[c]ourts typically presume that witnesses who are parties' employees and paid experts will appear voluntarily and therefore are less concerned about the burden that appearing at trial might impose on them." *Abbott Labs. v. Church & Dwight, Inc.*, No. 07 C 3428, 2007 WL 3120007, at *4 (N.D. Ill. Oct. 23, 2007). In this case, the parties appear to assume that similar witnesses will be needed to litigate the Indiana patents as were used in Phase I of the California case. If that is true, party employees from California, Tennessee, and Minnesota—not Indiana—can be expected to testify in the Indiana case. Yet their convenience is less significant in the transfer analysis. More critically, the parties have identified third-party witnesses whose testimony will be necessary to litigation of the Indiana case. Specifically, NuVasive intends to rely on the testimony of the California inventor of two of the Indiana patents and three non-party surgeons, among unnamed others, as non-expert fact witnesses in the Indiana case just as it did in the Phase I litigation. Plaintiffs only identify the Massachusetts inventor of one of the Indiana patents, who was not involved in the California

case, as a third-party witness. Given the greater number of identified third-party witnesses from California than any other locale, the convenience of the witnesses favors transfer.

### III. CONCLUSION

Venue is proper in both the Northern District of Indiana and the Southern District of California. Plaintiffs chose the Indiana court and that choice should receive substantial deference. However, in this case, NuVasive has shown a stronger nexus between the material events in this case and the Southern District of California. The California court is already familiar with the parties and related issues due to the ongoing litigation of a similar patent infringement action in its court. Any alleged infringement occurred predominantly in California. And more anticipated non-party witnesses are located in California than any other state, with none from Indiana. Therefore, for the convenience of the parties and witnesses, and in the interest of justice, the Defendants' motion is **GRANTED**. [Doc. No. 22]. The Court **ORDERS** that this case be **TRANSFERRED** to the Southern District of California pursuant to 28 U.S.C. § 1404(a).

**SO ORDERED**

Dated this 8th day of November, 2012.

S/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge