Luke L. Dauchot (S.B.N. 229829)
luke.dauchot@kirkland.com
Alexander F. MacKinnon (S.B.N. 146883)
alexander.mackinnon@kirkland.com
Nimalka R. Wickramasekera (S.B.N. 268518)
nimalka.wickramasekera@kirkland.com
Kirkland & Ellis LLP
333 South Hope Street
Los Angeles, California 90071
Telephone: (213) 680-8400
Facsimile: (213) 680-8500

Attorneys for Plaintiffs/Counterclaim Defendants,
WARSAW ORTHOPEDIC, INC.; MEDTRONIC
SOFAMOR DANEK U.S.A., INC.; MEDTRONIC
PUERTO RICO OPERATIONS CO.; OSTEOTECH,
INC.; MEDTRONIC, INC.; and MEDTRONIC
SOFAMOR DANEK DEGGENDORF, GMBH

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WARSAW ORTHOPEDIC, INC.; MEDTRONIC SOFAMOR DANEK U.S.A., INC.; MEDTRONIC PUERTO RICO OPERATIONS CO.; and OSTEOTECH, INC., <br><br> Plaintiffs, <br> vs. <br><br> NUVASIVE, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS. | ) CASE NO. 3:12-cv-02738-CAB (MDD) <br> ) <br> ) <br> ) <br> ) **PLAINTIFFS AND COUNTERCLAIM** <br> ) **DEFENDANTS' OPPOSITION TO** <br> ) **NUVASIVE'S MOTION TO STAY** <br> ) **THE '997 PATENT** <br> ) <br> ) <br> ) <br> ) Date: May 30, 2013 <br> ) Time: 10:00 a.m. <br> ) Judge: Hon. Cathy Ann Bencivengo <br> ) Courtroom: 4C |

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ............................................................................................. 1

II. BACKGROUND ............................................................................................. 2

    A. Procedural Posture ............................................................................. 2

    B. NuVasive's Petitions for *Inter Partes* Review of the '997 Patent ........ 4

    C. In Phase I, Patents Were Stayed Only After the PTO Decided To Institute Review ..................................................................................... 5

    D. The Subject Matter of the '997 Patent Is Related to NuVasive's Patents-In-Suit ..................................................................................... 6

III. LEGAL STANDARDS ................................................................................... 8

IV. ARGUMENT .................................................................................................. 9

    A. Staying the '997 Patent Will Not Simplify the Issues for Trial. ........... 9

    B. The Stage of this Litigation and the Prejudice Plaintiffs Will Suffer From a Stay of the '997 Patent Favor Denying NuVasive's Motion. 14

    C. It Is Unlikely NuVasive Will Invalidate Any of the '997 Patent's Claims in *Inter Partes* Review ......................................................... 16

V. CONCLUSION .............................................................................................. 19

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alltech, Inc. v. Cenzone Tech, Inc.*,
 No. 06CV0153 JM (RBB), 2007 WL 935516 (S.D. Cal. Mar. 21, 2007) ............... 13

*Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*,
 No. 6:12-cv-1727-Orl-37DAB (M.D. Fla. May 13, 2013) ........................................ 13

*Biomet Biologics, LLC v. Bio Rich Medical, Inc.*,
 No. SACV 10-1582 DOC (PJWx), 2011 WL 4448792 (C.D. Cal.
 Sept. 26, 2011) ...................................................................................................... 13, 16

*Enzo Biochem, Inc. v. Gen–Probe Inc.*,
 424 F.3d 1276 (Fed. Cir. 2005) ....................................................................................... 8

*Ethicon, Inc. v. Quigg*,
 849 F.2d 1422 (Fed. Cir. 1988) ....................................................................................... 8

*Everlight Elecs. Co. v. Nichia Corp.*,
 No. 12-cv-11758, 2013 WL 1821512 (E.D. Mich. Apr. 30, 2013) .................... 11, 13

*General Elec. Co. v. Vibrant Media, Inc.*,
 No. 12-526-LPS (D. Del. May 3, 2013) ....................................................................... 13

*I-Flow Corp. v. Apex Medical Techs., Inc.*,
 No. 07cv1200 DMS (NLS), 2008 WL 2078623 (S.D. Cal. Apr. 15, 2008) .......... 9, 14

*IMAX Corp. v. In-Three, Inc.*,
 385 F. Supp. 2d 1030 (C.D. Cal. 2005) ....................................................................... 12

*Largan Precision Co. v. Fujifilm Corp.*,
 No. C 10-1318 SBA, 2011 WL 794983 (N.D. Cal. Mar. 1, 2011) ......... 10, 11, 15, 16

*McCabe v. Floyd Rose Guitars*,
 No. 10-CV-0581 JLS (JMA), 2011 WL 1379861 (S.D. Cal. Apr. 12, 2011) .......... 12

*Nken v. Holder*,
 556 U.S. 418 (2009) .......................................................................................................... 8

*One StockDuq Holdings, LLC v. Becton, Dickinson & Co.*,
 No. 2:12-cv-03037-JPM-tmp (W.D. Tenn. May 6, 2013) .................................. 13, 15

*Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*,
 No. 12-cv-00021-JST-JPR (C.D. Cal. Dec. 19, 2012) ............................................ 9, 12

*Tierravision, Inc. v. Google, Inc.*,
 No. 11cv2170 DMS(BGS), 2012 WL 559993 (S.D. Cal. Feb. 21, 2012) ................ 12

*Tokuyama Corp. v. Vision Dynamics, LLC*,
 No. C 08-2781SBA, 2008 WL 4452118 (N.D. Cal. Oct. 3, 2008) ................ 9, 11, 15

*Tric Tools, Inc. v. TT Techs, Inc.*,
  No. 12-CV-3490 YGR, 2012 WL 5289409 (N.D. Cal. Oct. 25, 2012) ...............8, 16

*Ultra Prods., Inc. v. Antec, Inc.*,
  No. C 09-04255 RS, 2010 WL 1688538 (N.D. Cal. Apr. 26, 2010)...................15, 16

*Universal Elecs., Inc. v. Universal Remote Control, Inc.*,
  No. SACV 12-00329 AG (JPRx) (C.D. Cal. May 2, 2013) .....................................13

*Xilinx, Inc. v. Invention Investment Fund I LP*,
  Nos. 5:11-cv-00671 EJD; 5:11-cv-04407 EJD, 2012 WL 6003311 (N.D. Cal.
  Nov. 30, 2012) ......................................................................................................11

**Statutes**

35 U.S.C. § 141(c) ............................................................................................................4

35 U.S.C. § 311...............................................................................................................8

35 U.S.C. § 314(b) ..........................................................................................................4

35 U.S.C. § 316(a)(11) .....................................................................................................4

**Regulations**

37 C.F.R. § 42.107 ...........................................................................................................4

37 C.F.R. § 42.107(b) ..................................................................................................4, 15

37 C.F.R. § 42.108 ...........................................................................................................4

# I.    INTRODUCTION

NuVasive brings its motion for a stay under the pretense that the practice in this litigation is to stay patent claims *before* the Patent and Trademark Office ("PTO") grants a request for review. NuVasive's account of the parties' prior litigation history, however, ignores that NuVasive's patents in Phase I were stayed only *after* the PTO granted Warsaw's requests for reexamination, and not merely because Warsaw made the requests. If NuVasive truly wants reciprocal treatment, a stay should be considered here only if the PTO grants NuVasive's petitions for *inter partes* review of U.S. Patent No. 8,251,997 (the "'997 patent"). And while, as NuVasive argues, that history may guide this Court's decision, traditional and fact-specific factors such as efficiency and simplification of issues need also be addressed; here, they weigh heavily against a stay of the '997 patent even in the unlikely event that the request for *inter partes* review is granted.

NuVasive stands little chance of having its petition granted by the PTO—much less invalidating the '997 patent in *inter partes* review—because NuVasive is rehashing the same arguments that have been rejected by both the PTO and Judge Anello. Indeed, several of NuVasive's arguments directly contradict Judge Anello's findings of fact in the Phase I inequitable conduct trial, which NuVasive failed to disclose to the PTO in either of its petitions for *inter partes* review. In arguing for a stay, NuVasive relies heavily on general statistics of the PTO's *inter partes* review grant rate. But the fact that NuVasive's invalidity challenges have been repeatedly rejected not only in the context of PTO proceedings, but also at trial on the merits, renders NuVasive's statistics irrelevant.

Contrary to NuVasive's assertions, a stay of the '997 patent would be grossly inefficient and would not simplify the issues for trial because the accused and embodying products at issue in this case all relate to spinal fusion surgery. NuVasive's XLIF Surgical Technique and CoRoent XL family of implants both infringe the '997 patent and, according to NuVasive, embody its own asserted patents.

1

Similarly, NuVasive accuses Warsaw's DLIF technique and Clydesdale implant of infringement, while the same embody the '997 patent. Consequently, even if the Court stays the '997 patent, there will be little or no change in the substance of discovery, depositions, expert reports, or ultimately trial. All of these steps will revolve around exactly the same products—XLIF, DLIF, CoRoent, and Clydesdale. A stay would increase the costs of litigation and diminish judicial economy, especially because NuVasive's requests for *inter partes* review are likely to be denied in light of the Phase I orders that directly conflict with the positions NuVasive has taken in those requests.

This motion should be seen for what it is—another attempt to delay this case. When Plaintiffs[1] filed this action against NuVasive in August of last year for infringing three of its patents, NuVasive expressly stated that it did not want "litigation of the newly-asserted Warsaw patents to proceed in any forum" (Dkt. 30-3 at 2), and subsequently engaged in numerous delay tactics.[2] Now, eight months into this litigation, NuVasive seeks to apply the brakes yet again and stay proceedings as to the '997 patent. NuVasive's conduct suggests that it is not, and has never been, interested in efficient resolution of this case. This conduct should not be rewarded.

## II. BACKGROUND

### A. Procedural Posture

Plaintiffs sued NuVasive for infringement of three patents—the '997 patent and U.S. Patent Nos. 5,676,146 and 8,021,430 (the "'430 patent")—in August 2012 in the Northern District of Indiana. (Dkt. 17.) Rather than answer Plaintiffs' complaint,

---

[1] As used herein, Plaintiffs refers to Warsaw Orthopedic, Inc., Medtronic Sofamor Danek U.S.A., Inc., Medtronic Puerto Rico Operations Co., and Osteotech, Inc.

[2] (1) NuVasive moved to transfer this case from the Northern District of Indiana to this District and moved to stay the case pending decision on its motion to transfer; (2) NuVasive delayed filing a petition for *inter partes* reexamination of Warsaw's '430 patent until two days before the *inter partes* reexamination procedure was replaced by *inter partes* review; (3) NuVasive attempted to phase discovery into liability and damages portions, despite the inefficiency of doing so; and (4) NuVasive waited eight months to counter-assert its own patents against Plaintiffs.

NuVasive moved to transfer the case to this District and for a stay pending decision on NuVasive's motion to transfer. (Dkt. 22.) NuVasive then filed a request for reexamination of the '430 patent with the PTO on September 14, 2012, two days before *inter partes* reexamination was replaced by *inter partes* review. Before the PTO acted on NuVasive's request, Magistrate Judge Nuechterlein transferred this case from Indiana to this District. (Dkt. 32.) The PTO then granted NuVasive's request for reexamination of the '430 patent on November 29, 2012.[3]

Meanwhile, the case moved forward in this Court. The parties submitted their Rule 26(f) Joint Discovery Plan on February 14, 2013. In this plan, NuVasive proposed delaying liability fact discovery until the completion of claim construction proceedings and also proposed bifurcating damages and willfulness. (Dkt. 49 at 4–5.) One week later—and six months into this litigation—the parties and the Court held their Case Management and ENE Conferences on February 21, 2013. (*See* Dkts. 50 & 51.) On this day, NuVasive mentioned for the first time its intention to amend its answer to include several counterclaims for Plaintiffs' alleged infringement of eight NuVasive patents. On March 7, NuVasive amended its answer to include the eight counts of patent infringement. (Dkt. 55.) On March 22, NuVasive filed two petitions for *inter partes* review of the '997 patent with the PTO and the instant motion with this Court. (Dkts. 58-24 & 58-25.) The PTO has not granted NuVasive's petitions.

Discovery between the parties has commenced. On April 15, the parties exchanged their Patent Local Rule 3.1 disclosures of asserted claims and infringement contentions. In those disclosures, Plaintiffs asserted that NuVasive is infringing

---

[3] Plaintiffs do not oppose a stay of the '430 patent pending its reexamination by the PTO because, in its currently amended form, the '430 patent does not read on the accused NuVasive products in this case. The PTO has, however, recently allowed Warsaw's U.S. Patent Application No. 13/235,998, which is scheduled to issue on May 21, 2013 as U.S. Patent No. 8,444,696 (the "'696 patent"). The '696 patent is a continuation of the '430 patent with claims directed to a fusion implant, which, after issuance, will be infringed by NuVasive's CoRoent and CoRoent XL implants. Plaintiffs intend to seek leave from this Court to amend their complaint accordingly once this patent issues.

claims 1–6, 8, and 17–30 of the '997 patent. The parties have also served their first sets of Requests for Production of Documents, first sets of interrogatories, and notices of 30(b)(6) depositions.

### B. NuVasive's Petitions for *Inter Partes* Review of the '997 Patent

*Inter partes* review ("IPR") is a new procedure created by the Leahy-Smith America Invents Act designed to replace *inter partes* reexamination. IPR effectively provides for administrative litigation and "trial" in the PTO, whereas *inter partes* reexamination resembled ordinary prosecution before the PTO. Unlike *inter partes* reexamination, however, the patent owner in an IPR proceeding has a right to file a preliminary response before the PTO acts on a petition. *See* 37 C.F.R. § 42.107. The PTO then decides whether to institute *inter partes* review (*i.e.* grant the petition) for all, some, or none of the claims challenged by the petitioner. *Id.* § 42.108. If the PTO institutes IPR, the parties officially begin administrative litigation in the PTO.

An IPR procedure can take three years to complete. First, the patent owner has three months to file its preliminary response to a petition. 37 C.F.R. § 42.107(b). The PTO then has three months to institute trial or deny the petition. 35 U.S.C. § 314(b). Accordingly, it may take up to six months after the filing of the petition for the PTO to deny the request. *Id.* If the PTO institutes trial, it has up to 18 months to decide the case. *Id.* § 316(a)(11). Finally, either party can appeal the decision of the PTO directly to the Federal Circuit. 35 U.S.C. § 141(c). In 2012, the median time to disposition of an appeal in the Federal Circuit from a PTO proceeding was 11.7 months. (Ex. 1.)[4] Thus, an IPR procedure can reasonably take 35.7 months to complete.[5]

---

[4] Except where noted, all citations to exhibits are to the Declaration of Nimalka R. Wickramasekera in Support of Plaintiffs and Counterclaim Defendants' Opposition to NuVasive's Motion to Stay the '997 Patent ("Ex.").

[5] By contrast, in 2012 the median pendency of an *inter partes* reexamination proceeding was 33.1 months from filing date to certificate issue date. (Dkt. 58-21.)

NuVasive filed two petitions for *inter partes* review of the '997 patent. The first petition (Case IPR2013-208) seeks *inter partes* review of claims 1–8 while the second petition (Case IPR2013-206) seeks *inter partes* review of claims 9–30. (Dkts. 58-24 at 1; 58-25 at 1.) Both petitions rely on the same interpretations of the prior art rejected by Judge Anello in the parties' Phase I inequitable conduct and liability trials regarding Warsaw's U.S. Patent No. 5,680,973 (the "'973 patent").[6] For example, NuVasive's petitions reference U.S. Patent No. 5,192,327 ("Brantigan '327"), U.S. Patent No. 5,015,247 ("Michelson '247"), and several publications by Dr. Crock. NuVasive asserts these references disclose the lateral implant limitations of the '997 methods. (*See e.g.* Dkt. 58-24 at 11–12; 58-25 at 16.) Judge Anello, however, sitting as the finder of fact in the inequitable conduct trial, found that, "To a person of ordinary skill in the art, the Brantigan '327 patent does not teach spinal fusion implants capable of translateral insertion." (Ex. 2 at 9.) Regarding Dr. Crock's publications, Judge Anello found that, "To a person of ordinary skill in the art, the Crock Article and the Crock Book address anterior lumbar interbody fusion operations, not translateral spinal implant procedures." (*Id.* at 7.) NuVasive did not disclose these findings of fact to the PTO in its petitions for *inter partes* review of the '997 patent.

## C. In Phase I, Patents Were Stayed Only After the PTO Decided To Institute Review

The first phase of this case began when Warsaw sued NuVasive in August of 2008 for infringement of nine of its patents related to spinal surgery. NuVasive filed counterclaims against Warsaw, alleging infringement of three of its own patents, including U.S. Patent Nos. 7,207,949 (the "'949 patent") and 7,582,058 (the "'058

---

[6] The '997 and '973 patents are related and share many similarities—indeed, NuVasive argued as much in its motion to transfer this case to this District. (*See* Dkt. 23 at 6–8.) For example, NuVasive pointed out the '973 and '997 patents both accuse the CoRoent XL implants and were invented by Dr. Michelson in arguing that there is substantial overlap between the patents. (*Id.* at 7.)

patent"). Both parties sought relief from the PTO by filing requests for *inter partes* reexamination on a subset of its opponent's patents-in-suit. Warsaw filed requests on NuVasive's '949 and '058 patents and moved this Court to stay both in two separate motions. (*See* Dkts. 58-4 & 58-9.) NuVasive similarly filed requests on six of Warsaw's nine patents-in-suit and moved for a stay. (*See* Dkt. 58-3.) After filing these motions, the parties agreed to "phase" the litigation by selecting three patents each for a first trial. Warsaw selected its three patents not subject to a request for reexamination, thereby obviating NuVasive's motion to stay.

Warsaw's two motions followed an identical sequence: Warsaw filed its motion for a stay; the PTO granted review of the patent-at-issue; and then Judge Anello granted Warsaw's motion. (*See* Dkt. 58-6 at 6 (stay order noting that PTO had granted *inter partes* reexamination and rejected all claims of the '949 patent); Dkt. 58-12 at 3 (stay order noting that PTO had granted *inter partes* reexamination and rejected all asserted claims of the '058 patent). The following chart illustrates this sequence:

| Action | '949 Patent | '058 Patent |
|---|---|---|
| *Warsaw files motion to stay* | June 23, 2009 | November 16, 2009 |
| *PTO grants review* | August 14, 2009 | December 17, 2009 |
| *Court grants motion to stay* | November 5, 2009 | January 12, 2010 |

In short, the practice in Phase I has been to stay a patent **only** after the PTO decided to institute review.

**D.      The Subject Matter of the '997 Patent Is Related to NuVasive's Patents-In-Suit**

The independent claims of the '997 patent generally recite a method of spinal surgery comprising the steps of accessing a lateral aspect of the spine and inserting a spinal fusion implant. (*See* Dkt. 58-14.) NuVasive has asserted eight patents in this

case related to methods of lateral spinal surgery, lateral spinal access systems, and lateral spinal fusion implants. (*See* Dkt. 55.) The accused and embodying products and methods identified in these disclosures demonstrate the overlap between the '997 patent and NuVasive's patents-in-suit.

NuVasive primarily accuses Plaintiffs' Direct Lateral Interbody Fusion ("DLIF") procedure and Clydesdale implant of infringing its patents-in-suit. (*Id.*) NuVasive also claims its eXtreme Lateral Interbody Fusion ("XLIF") procedure and CoRoent XL implants embody the claims of its patents-in-suit. (Ex. 3 at 6–7.) These same products and methods infringe or embody the '997 patent—NuVasive's XLIF and CoRoent XL implants infringe the '997 patent and Warsaw's DLIF and Clydesdale implant embody the claims of the '997. The following table demonstrates this overlap of subject matter:

| Patent No. | Technology | Accused Product or Method[7] | Embodying Product or Method |
|---|---|---|---|
| 8,251,997 | Lateral method | XLIF / CoRoent XL | DLIF / Clydesdale |
| 8,000,782 | Stimulated dilators | DLIF | XLIF |
| 8,005,535 | Lateral method | DLIF / Clydesdale | XLIF / CoRoent XL |
| 8,016,767 | Lateral method | DLIF / Clydesdale | XLIF / CoRoent XL |
| 8,192,356 | Spinal access system | DLIF / Clydesdale | XLIF / CoRoent XL |
| 8,187,334 | Fusion implant | Clydesdale | CoRoent XL |
| 8,361,156 | Fusion implant | Clydesdale | CoRoent XL |

Additionally, Plaintiffs intend to assert many of the prior art references cited in NuVasive's petitions for IPR as invalidating prior art to NuVasive's patents-in-suit. For example, the following references were cited in NuVasive's petitions for IPR and will be litigated in this case as prior art to NuVasive's patents-in-suit: U.S. Patent No. 4,545,374 to Jacobson ("Jacobson '374"); U.S. Patent No. 5,772,661 to Michelson

---

[7] The list of accused and embodying products and methods in this table is not exhaustive. Both Plaintiffs and NuVasive have identified additional products and methods that infringe and embody their patents-in-suit.

("Michelson '661"); Leu, et al., *Percutaneous Fusion of the Lumbar Spine*, Spine Vol. 6, No. 3, pp. 593-604 (September 1992) ("Leu"); U.S. Patent No. 4,573,448 to Kambin ("Kambin '448"); WO 94/28824 to Michelson ("Michelson PCT"); and Baulot, et al., *Adjuvant Anterior Spinal Fusion Via Thorascopy*, Lyon Chirurgical Vol. 90, No. 5, pp. 347-51 (November 1994) ("Baulot"). (*See, e.g.,* Dkt. 58-25 at 2–3.) The Michelson '661 patent, as NuVasive repeatedly notes in its Opening Brief, is a parent filing of, and shares a specification with, the '997 patent. The PTO recently rejected the claims of NuVasive's '058 and '949 patents in *inter partes* reexamination as unpatentable over, *inter alia*, the Michelson '661 patent. (*See* Exs. 4 & 5.) The '058 and '949 patents are parent filings of NuVasive's presently-asserted '356 and '767 patents, respectively.

## III.   LEGAL STANDARDS

"A patent is presumed to be valid, and this presumption only can be overcome by clear and convincing evidence to the contrary." *Enzo Biochem, Inc. v. Gen–Probe Inc.*, 424 F.3d 1276, 1281 (Fed. Cir. 2005) (citation omitted). Subject to certain limitations, "a person who is not the owner of a patent may file with the Patent Office a petition to institute an inter partes review of the patent . . . ." 35 U.S.C. § 311. A district court has the discretion to stay judicial proceedings pending PTO review of a patent. *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988). NuVasive "bears the burden of showing that the circumstances justify the exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009). A "court is under no obligation to delay its own proceedings on account of a PTO patent reexamination, regardless of their relevancy to infringement claims." *Tric Tools, Inc. v. TT Techs, Inc.*, 2012 WL 5289409, at *1 (N.D. Cal. Oct. 25, 2012). "There is no per se rule that patent cases should be stayed pending reexaminations, because such a rule would invite parties to unilaterally derail litigation." *Id.*

## IV. ARGUMENT

Courts decide motions to stay pending *inter partes* review under the same standard as motions to stay pending *inter partes* reexamination. *See Semiconductor Energy Lab. Co. v. Chimei Innolux Corp.*, No. 12-cv-00021-JST-JPR, at n.1 (C.D. Cal. Dec. 19, 2012), ECF No. 116 (Dkt. 58-23).[8] This standard focuses on three factors: (1) whether a stay will simplify the issues in question and trial of the case; (2) the stage of the litigation; and (3) whether a stay would unduly prejudice or present a clear tactical disadvantage to the nonmoving party. *See I-Flow Corp. v. Apex Medical Techs., Inc.*, 2008 WL 2078623, at *1 (S.D. Cal. Apr. 15, 2008). As shown below, each of these factors weighs against granting NuVasive's premature motion to stay based on mere requests for *inter partes* review of the '997 patent. Because a stay will not simplify the issues for trial (since NuVasive's remaining patents-in-suit all relate to overlapping technology—methods and systems for performing lateral spinal surgery) and it is unlikely that NuVasive will invalidate all the asserted claims of the '997 patent in IPR, a stay would result only in duplicative efforts down the road, including conducting two trials before this Court on the identical technology.

### A. Staying the '997 Patent Will Not Simplify the Issues for Trial.

The first factor of the three-part test examines whether a stay will simplify a trial by streamlining its issues. At the outset, it is undisputed that "a stay pending reexamination does not simplify the issues and reduce the complexity of the trial ***in every case***." *Tokuyama Corp. v. Vision Dynamics, LLC*, 2008 WL 4452118, at *3 (N.D. Cal. Oct. 3, 2008). And NuVasive has failed to make the requisite showing that a stay of the '997 patent would simplify the issues here. To the contrary, staying the '997 patent would be grossly inefficient because it would not lead to a reduction of the core subject matter that will be at issue in this case—lateral interbody fusion surgery—to which all of NuVasive's eight asserted patents relate. *See Largan*

---

[8] NuVasive does not contest that caselaw regarding reexamination proceedings is equally pertinent to *inter partes* review proceedings.

*Precision Co. v. Fujifilm Corp.*, 2011 WL 794983, at *3 (N.D. Cal. Mar. 1, 2011) (denying motion to stay where patents-in-suit share overlapping evidence and have similar technology and scientific principles). Both the claims of the '997 patent and two of NuVasive's patents (the '767 and '535 patents) involve a method of accessing a lateral aspect of an intervertebral space and inserting a fusion implant. And while NuVasive accuses Warsaw's DLIF or Clydesdale products of infringing six of its asserted patents, these are the very same products that embody the '997 patent. Similarly, NuVasive's XLIF and CoRoent XL products infringe the '997 patent and embody six of NuVasive's asserted patents. Thus, regardless of whether the '997 patent remains at issue, the XLIF, DLIF, CoRoent XL, and Clydesdale products will be center stage throughout fact and expert discovery, dispositive motions, and trial.

A stay would also not reduce the prior art that will be at issue. For example, even if the '997 patent is stayed, the specification of the '997 patent, which is shared by the '661 patent, will still be at issue because Plaintiffs intend to assert the '661 patent as invalidating prior art against NuVasive's lateral method patents. Plaintiffs also intend to assert several of the prior art references cited by NuVasive in its petitions for *inter partes* review of the '997 patent as invalidating prior art to NuVasive's patents-in-suit. At a minimum, Jacobson '374, Michelson '661, Leu, Kambin '448, Michelson PCT, and Baulot—all cited by NuVasive as prior art to the '997 patent—will be asserted as invalidating prior art by Plaintiffs and central to this case. For example, NuVasive asserts that Jacobson '374 discloses a direct lateral surgical approach to the spine in its petitions for IPR. (See e.g. Dkt. 58-24 at 15.) Similarly, NuVasive asserts that the Leu publication demonstrates the "obvious choice of using one or more sequential dilators" in a lateral surgical method. (Dkt. 58-24 at 11.) Four of NuVasive's patents-in-suit recite methods or systems of a trans-psoas approach (*i.e.* lateral approach) to the spine utilizing sequential dilation. As such, Jacobson and Leu, at a minimum, will be central to both Plaintiffs' and NuVasive's invalidity case, and litigated in this Court with or without the '997 patent.

Accordingly, fact and expert discovery on these issues would not be narrowed simply by a stay of the '997 patent. Meanwhile, keeping the '997 patent in this case would require almost no additional discovery beyond what is already required due to the overlapping subject matter.

Courts recognize the inherent inefficiencies of staying only one of several patents-in-suit in circumstances where, as here, the patents share "similar technology[,] scientific principles," and overlapping subject matter. *Largan Precision*, 2011 WL 794983 at *3–4. In fact, courts deny stays on this basis alone. *See id.* (denying motion to stay patent subject to reexamination because the overlapping subject matter would not simplify issues for trial); *Everlight Elecs. Co. v. Nichia Corp.*, 2013 WL 1821512, at *9 (E.D. Mich. Apr. 30, 2013) (denying motion to stay and holding a partial stay is disfavored because it would inefficiently result in two trials on patents-in-suit that all related to LED technology); *Tokuyama*, 2008 WL 4452118 at *3 (denying stay where "the outcome of the reexamination [will not] finally resolve all issues in the litigation").

In *Largan Precision*, for instance, the court reasoned that because "the case would still proceed as to [the remaining patent] . . . the reexamination will not fully resolve all issues in the litigation." 2011 WL 794983 at *3. Even though the two patents-in-suit did not share the same inventor or come from the same family, they did share similar technology—as do the '997 patent and NuVasive's patents-in-suit. *Id.* Thus, "staying this case as to [one] patent while proceeding with the [other] patent would likely result in two full patent infringement trials in this Court, with overlapping evidence, by the same parties, but years apart." *Id.* at *3. Courts routinely deny stays where "the outcome of the reexamination [will not] finally resolve all issues in the litigation," even where there is no overlap with the remaining issues. *Tokuyama*, 2008 WL 4452118 at *3; *Xilinx, Inc. v. Invention Investment Fund I LP*, 2012 WL 6003311, at *2 (N.D. Cal. Nov. 30, 2012) (holding stay would not simplify issues in litigation because "four of the patents-in-suit are not currently

11

undergoing reexamination . . . [and] the court will have to resolve all claims in dispute as to those patents"); *IMAX Corp. v. In-Three, Inc.*, 385 F. Supp. 2d 1030, 1033 (C.D. Cal. 2005) (holding stay would not simplify issues for trial because "[e]ven if the PTO eliminates all the claims of the [patent-at-issue], which is statistically unlikely, the court must still address [defendant's] counterclaims"). [9]

Ignoring this body of law and without citation to any authority, NuVasive argues that the overlap in technology and issues between the '997 patent and NuVasive's patents-in-suit is an "inadequate basis to deny a stay here" because "emerging statistics suggest that nearly all requests for *inter partes* review" are being granted. (Dkt. 58-1 at 13.) But neither statistics nor NuVasive's caselaw support its position. Unlike the situation here, all of the cases relied upon by NuVasive grant stays either where a request for PTO review was already granted or ***all*** the patents-in-suit were challenged in the PTO. *See Tierravision, Inc. v. Google, Inc.*, 2012 WL 559993, at *2 (S.D. Cal. Feb. 21, 2012) ("With *the claims in reexamination*, the parties are litigating this case on a bed of shifting sand.") (emphasis added); *McCabe v. Floyd Rose Guitars*, 2011 WL 1379861, at *1–2 (S.D. Cal. Apr. 12, 2011) (granting motion to stay after reexamination requests for all five patents-in-suit were granted by the PTO but holding stay would not simplify the issues because plaintiff asserted non-patent infringement claims); *Semiconductor Energy*, (Dkt. 58-23 at *3) (reasoning that there is a strong likelihood a stay will facilitate trial "where, as here, a party has *requested reexamination of each of the patents-in-suit*, and . . . asserts claims only for patent infringement") (emphasis added).

---

[9] NuVasive will likely argue the overlapping issues and subject matter in this case should not be considered by the Court because a similar overlap existed in the parties' prior litigation and NuVasive's patents were still stayed. This argument, however, would ignore that the parties agreed to phase their prior litigation. Plaintiffs opted not to litigate their '661 patent (reciting a method of laterally accessing the spine) until after Phase I of that case. If either of NuVasive's '058 and '949 patents (both relating to methods of laterally accessing the spine) survived reexamination, they would have been litigated with Plaintiffs' related '661 patent. In short, given that the parties already agreed to phase that litigation, no efficiency was lost by staying the '058 and '949 patents.

And contrary to NuVasive's assertion that courts are granting motions to stay based merely on requests for *inter partes* review, courts are routinely denying these motions. *See One StockDuq Holdings, LLC v. Becton, Dickinson & Co.*, No. 2:12-cv-03037-JPM-tmp, at *3–4 (W.D. Tenn. May 6, 2013), ECF No. 53 ("The Court agrees with Plaintiff that a stay in this case is premature . . . [because] the PTO has not yet granted Defendant's Petition for [IPR] and it is possible that the PTO will never grant Defendant's Petition.") (Ex. 6); *Automatic Mfg. Sys., Inc. v. Primera Tech., Inc.*, No. 6:12-cv-1727-Orl-37DAB, at *4–5 (M.D. Fla. May 13, 2013), ECF No. 36 ("[I]t seems clear that a stay of a patent infringement action is not warranted when based on nothing more than the fact that a petition for *inter partes* review was filed in the USPTO . . . because a stay could delay these proceedings for at least six months with little to show, the Court finds that a stay would unduly prejudice or present a clear tactical disadvantage to Plaintiff.") (Ex. 7); *Universal Elecs., Inc. v. Universal Remote Control, Inc.*, No. SACV 12-00329 AG (JPRx), at *12 (C.D. Cal. May 2, 2013), ECF No. 78 (denying motion to stay where PTO had not granted petition for IPR) (Ex. 8); *General Elec. Co. v. Vibrant Media, Inc.*, No. 12-526-LPS, at *1 (D. Del. May 3, 2013), ECF No. 49 (denying motion to stay pending *inter partes* review) (Ex. 9); *Everlight Elecs.*, 2013 WL 1821512 at *2–3 (same).

NuVasive also argues that the estoppel provisions of *inter partes* review will necessarily simplify the issues for trial before a request for review is granted. (Dkt. 58-1 at 8.) But this argument has been rejected time and again. *See Biomet Biologics, LLC v. Bio Rich Medical, Inc.*, 2011 WL 4448792, at *3 (C.D. Cal. Sept. 26, 2011) ("[A]lthough the PTO's reexamination . . . has the potential to simplify the issues at trial, that mere possibility is not sufficient to outweigh the likely prejudice against Plaintiffs if the stay was granted."); *Alltech, Inc. v. Cenzone Tech, Inc.*, 2007 WL 935516, at *3 (S.D. Cal. Mar. 21, 2007) ("Although reexamination could eliminate the need for trial on certain claims, this is only speculation.").

Finally, NuVasive argues that staying the '997 patent would simplify the case because the Federal Circuit's review of the parties' prior litigation could give "guidance on key issues" in this case. (Dkt. 58-1 at 13.) NuVasive, again, cites no authority for this proposition. And with the exception of the issue of the compulsory ongoing royalty rates for NuVasive's post-verdict infringement of the '973 and '933 patents as a result of the denial of Warsaw's requested injunction, all issues relating to liability and damages for the Phase I patents have been decided and are ready for appeal. There is no reason to assume (as NuVasive does) that Judge Anello decided these issues incorrectly. In any event, a Federal Circuit appeal will likely be concluded before the trial in this matter.

In sum, NuVasive has failed to show that staying one of nine patents in this case related to lateral interbody fusion surgery would simplify the issues in this case. To the contrary, it would require the parties to duplicate efforts down the road on identical technology. Accordingly, this factor weighs against staying the '997 patent.

### B. The Stage of this Litigation and the Prejudice Plaintiffs Will Suffer From a Stay of the '997 Patent Favor Denying NuVasive's Motion.

The remaining two factors of the three-part test consider the stage of litigation and the prejudice to the nonmoving party. *I-Flow Corp.*, 2008 WL 2078623, at *1. NuVasive argues that these factors favor a stay because "[t]he parties have done little in the case to date" and Plaintiffs' counsel allegedly "raised no concern [during the February 21, 2013 status conference] that this would somehow prejudice his client's rights." (Dkt. 58-1 at 10, 15.) Even looking past the inaccuracy of NuVasive's statements,[10] these factors decidedly weigh against a stay.

---

[10] Plaintiffs' counsel did not concede during the February 21, 2013 status hearing that Plaintiffs would not be prejudiced should the Court stay the '997 patent. In fact, it was for this very reason—the prejudice and tactical disadvantage to Plaintiffs—that counsel indicated Plaintiffs would oppose any stay of the '997 patent. (*See* Dkt. 58-1 at 15.)

**First**, the PTO has not yet granted NuVasive's requests for *inter partes* review and it is possible—and, as discussed below, highly likely— that the PTO will never grant NuVasive's petitions. *See One StockDuq Holdings,* Ex. 6 at 3; *Ultra Prods., Inc. v. Antec, Inc.*, 2010 WL 1688538, at *1 (N.D. Cal. Apr. 26, 2010) (denying stay based upon a mere request where it "would impose potentially unreasonable delay and prejudice but does not with any certainty benefit or streamline the litigation.").

**Second**, staying the case at this juncture could result in an unnecessary delay if the PTO does not grant *inter partes* review of all asserted claims of the '997 patent. *See One StockDuq Holdings,* Ex. 6 at 3–4; *Tokuyama*, 2008 WL 4532565 at *1. On March 22, 2013, NuVasive filed two petitions for *inter partes* review of the '997 patent, the first seeking *inter partes* review of claims 1–8 and the second seeking *inter partes* review of claims 9–30. (Dkt. 58-24 at 1; Dkt. 58-25 at 2.) Warsaw's preliminary responses to the petitions will be filed with the PTO no later than June 25, 2013. 37 C.F.R. § 42.107(b). The PTO must then grant or deny NuVasive's petitions no later than September 25, 2013, over one month before this Court will hear the parties' claim construction arguments on November 7, 2013. Thus, in order for all asserted claims 1–6, 8, and 17–30 of the '997 patent to be subject to *inter partes* review, the PTO must grant **both** of NuVasive's petitions. Should the PTO fail to grant *inter partes* review of all the asserted claims, those asserted claims for which the PTO has denied NuVasive's requests will have been unnecessarily delayed for months compared to the remaining patents in this case.

**Third**, Plaintiffs would be prejudiced if the Court stays only one of several patents-in-suit with overlapping subject matter. *See Largan Precision*, 2011 WL 794983, at *4. For example, in *Largan Precision*, the court held that a partial stay would prejudice the patentee and give a clear tactical advantage to the accused infringer:

> "[I]ssuing a partial stay would likely result in greater costs and delay by requiring [the patentee] to proceed with two separate patent litigations in this Court, involving overlapping issues and evidence. There would be

clear efficiencies gained for the Court and the parties from trying the issues concerning the two similar patents in a single case, rather than substantially duplicating proceedings."

*Id.* Similarly, if this Court stays the '997 patent, Plaintiffs will be forced to substantially duplicate their work when the PTO denies NuVasive's IPR requests or confirms the validity of the '997 patent claims, thus putting Plaintiffs at a tactical disadvantage. *See id*; *see also Ultra Prods.*, 2010 WL 1688538, at *3. Deponents will be recalled to testify, summary judgment briefs will again be filed on XLIF, DLIF, CoRoent XL, and Clydesdale, and trial witnesses will be recalled to testify before the Court on the same systems and methods. In short, two trials will be had on the same subject matter, a result that heavily weighs against granting a stay. *See Largan Precision*, 2011 WL 794983, at *3–4 (holding that staying one of multiple patents-in-suit that "contain similar technology and scientific principles" that "result in two full patent infringement trials in this Court, with overlapping evidence, by the same parties, but years apart" does not simplify the issues for trial). Courts are more sensitive to the prejudice suffered by a nonmoving party where, as here, a stay would not simplify the issues for trial. *See Ultra Prods.,* 2010 WL 1688538 at *1; *Biomet Biologics*, 2011 WL 4448792 at *1 ("Generally, if a stay would more likely than not delay the district court proceedings without any countervailing benefit, the court should proceed with the merits of the case without the benefit of the PTO reexamination.").

Thus, the stage of the litigation and the prejudice Plaintiffs will suffer favor denying NuVasive's motion to stay the '997 patent.

## C. It Is Unlikely NuVasive Will Invalidate Any of the '997 Patent's Claims in *Inter Partes* Review

A stay will not simplify the issues for trial when it is based on a petition for review that is not likely to be granted by the PTO or invalidate the challenged claims. *See Tric Tools*, 2012 WL 5289409, at *2 (denying motion for stay where PTO not likely to grant request for reexamination or invalidate challenged claims). As

discussed above, NuVasive's petitions for IPR stand little chance of invaliding the '997 patent because they rely heavily on the same flawed interpretations of the prior art rejected by Judge Anello in the parties' Phase I inequitable conduct and liability trials regarding Warsaw's '973 patent. For example, NuVasive again argues that Brantigan '327 discloses a direct lateral implant. Judge Anello, however, found just the opposite: "To a person of ordinary skill in the art, the Brantigan '327 patent does not teach spinal fusion implants capable of translateral insertion." NuVasive's petitions for IPR do little more than rehash many failed interpretations of Brantigan '327 and other prior art references in an effort to avoid Judge Anello's ruling. (*Cf.* Ex. 2 at 9 with Dkt. 58-24 at 19–20.) The same is true for other prior art references (*e.g.* Michelson '247, Crock). (*See e.g.* Dkt. 58-24 at 27.) Remarkably, in its request for *inter partes* review of the '997 patent, NuVasive failed to inform the PTO of Judge Anello's order relating to the identical prior art references that it relies upon in its two petitions.

Further, eight out of the eleven prior art references cited in NuVasive's petitions were considered by the examiner of the '997 patent. The three references that were not considered by the examiner—Frey '704, McAfee '290, and the Alacreu publication—either relate solely to dependent limitations or relate only to claims not presently asserted against NuVasive. (*See* Dkt. 58-24 at 4; 58-25 at 3.) As a result, NuVasive's invalidity arguments have largely been considered and rejected by the PTO, as well as this Court. This is particularly true for the asserted independent claims of the '997 patent and there is no reason to suspect the PTO will change course now.

NuVasive argues that the PTO will "take a careful look" at the '997 patent because its priority filing, the '661 patent, was abandoned in reissue proceedings. (Dkt. 58-1 at 13.) NuVasive's logic is flawed. Not only did the '997 patent issue *after* the '661 patent was abandoned in reissue proceedings, but the two office actions in the '661 patent reissue proceedings were submitted to the examiner of the '997

patent's application.  The examiner of the '997 patent issued this patent with full knowledge of the '661 patent's reissue proceedings and the prior art cited against it. In any event, the '997 and '661 patents have different claims.  If anything, this history suggests the '997 patent will survive NuVasive's petitions for IPR.

Finally, NuVasive cannot hide behind statistics to make up for the weakness of its IPR positions, particularly when the arguments it advances have already been considered and rejected by either the PTO, a jury, or Judge Anello.  These statistics do not tell us the relative strength of the prior IPR requests and do not change the weakness of NuVasive's requests.  For instance, all of NuVasive's proposed bases of rejection in these petitions are three or more reference obviousness combinations.[11] (Dkt. 58-24 at 3; Dkt. 58-25 at 2–3.)  And NuVasive's arguments are merely recycled versions of positions that have been rejected on multiple occasions.  NuVasive's small sample size is also outdated.  Several recent petitions have been rejected outright[12] and even more have been rejected in part.[13]

---

[11]  NuVasive included four two-reference obviousness grounds of rejection with the '661 patent as prior art.  The '661 patent is a parent filing of the '997 and, therefore, is not prior art.

[12]  *See, e.g., Synopsys, Inc. v. Mentor Graphics Corp.*, Case No. IPR2012-00041, Paper No. 16 (Ex. 10); *Monsanto Co. v. Pioneer Hi-Bred Int'l, Inc.*, Case No. IPR2013-00023, Paper No. 32 (Ex. 11); *Wowza Media Sys. LLC v. Adobe Sys. Inc.*, IPR2013-00054, Paper No. 12 (Ex. 12).

[13]  *See, e.g., Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, Case No. IPR2012-00001, Paper No. 15 (Ex. 13); *Macauto U.S.A. v. BOS GmbH & KG*, Case No. IPR2012-00004, Paper No. 18 (Ex. 14); *Microsoft Corp. v. Proxyconn, Inc.*, Case No. IPR2012-00026, Paper No. 17 (Ex. 15); *Synopsys v. Mentor Graphics Corp.*, Case No. IPR2012-00042, Paper No. 16 (Ex. 16); *Denso Corp. and Clarion Co. v. Beacon Navigation GmbH*, IPR2013-00026, Paper No. 12 (Ex. 17).

## V. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request the Court denies NuVasive's motion.

DATED: May 16, 2013                    Respectfully submitted,

                                       KIRKLAND & ELLIS LLP


                                       _/s/ Nimalka R. Wickramasekera_
                                       Luke L. Dauchot
                                       Alexander F. MacKinnon
                                       Nimalka R. Wickramasekera

                                       Attorneys for Plaintiffs/Counterclaim
                                       Defendants, WARSAW ORTHOPEDIC, INC.;
                                       MEDTRONIC SOFAMOR DANEK U.S.A.,
                                       INC.; MEDTRONIC PUERTO RICO
                                       OPERATIONS CO.; OSTEOTECH, INC.;
                                       MEDTRONIC, INC.; and MEDTRONIC
                                       SOFAMOR DANEK DEGGENDORF, GMBH

## CERTIFICATE OF SERVICE

I am employed in the County of Los Angeles; I am over the age of eighteen years and not a party to the within entitled action; my business address is 333 South Hope Street, Los Angeles, California 90071.

On May 16, 2013, true and correct copies of the foregoing document were served to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4. Any other counsel of record will be served by electronic mail, facsimile, U.S. Mail and/or overnight delivery.

☒ FEDERAL: I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 16, 2013, in Los Angeles, California.

_/s/ Nimalka R. Wickramasekera_
Nimalka R. Wickramasekera